1  Jonathan Shub (237708)
   Kohn Swift & Graf, P.C.
2  One South Broad Street, Suite 2100
   Philadelphia, PA 19107
3  Telephone:  215-238-1700
   Facsimile:   215-238-1968
4  Email:    jshub@kohnswift.com

5  Attorneys for Plaintiff
   [Additional counsel listed on signature page]
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  FRANK NANCE, on behalf of himself    CASE NO. 8:16-cv-00704
    and all others similarly situated,
12                                        **COMPLAINT**
            Plaintiff,
13
            v.
14                                        **Demand for Jury Trial**
    SAMSUNG ELECTRONICS
15  AMERICA, INC.,

16          Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

7563192.2

**COMPLAINT**

1       Plaintiff Frank Nance ("Plaintiff"), by and through his undersigned attorneys,

2   on behalf of himself and the proposed classes (defined *infra*), demanding trial by

3   jury of all claims properly triable thereby, makes the following allegations and

4   claims against the above-referenced Defendant Samsung Electronics America, Inc.

5   ("Samsung" or "Defendant").

6

7                       **JURISDICTION**

8       1.     This Court has jurisdiction over all causes of action asserted herein

9   pursuant to the Class Action Fairness Act.  28 U.S.C. § 1332(d).

10

11                **PRELIMINARY STATEMENT**

12      2.     This action is brought by Plaintiff, on behalf of Plaintiff and the

13  proposed classes, to recover damages and restitution in connection with the purchase

14  of Samsung-brand televisions that were falsely marketed and advertised by Samsung

15  as "LED TVs," "LED HDTVs" or "LED televisions."  Plaintiff and the proposed

16  classes also seek an injunction:  (a) requiring Samsung to engage in a corrective

17  advertising campaign to alert consumers as to the true nature of these televisions;

18  (b) prohibiting Samsung from continuing falsely to market and advertise such

19  televisions as "LED TVs," "LED HDTVs," or "LED televisions"; and (c) requiring

20  Samsung to recall and re-label all such televisions that have already been distributed

21  for re-sale, but not yet sold to retail customers

22      3.     The televisions at issue are not "LED TVs," but instead are LCD TVs

23  that use light emitting diodes (LEDs) instead of cold cathode fluorescent lights

24  (CCFLs) to light the liquid crystal display (LCD) panel that is present in each of the

25  televisions at issue.

26      4.     Samsung's failure to disclose that its references to LED refer to the

27  light source that illuminates the LCD panel, instead of the display technology itself,

28  and its nondisclosure and concealment that each of the televisions is otherwise

visually indistinguishable from televisions that are advertised and sold as "LCD TVs," were at all times knowing, intentional, and intended to mislead consumers. Samsung's false and misleading marketing and advertising were and are designed falsely to suggest that the televisions at issue are not LCD TVs at all, but an entirely different, improved, and technologically advanced class or "species" of television. This is false; all of these televisions are LCD TVs.

5.      Samsung has used and continues to use this deception:  (a) to induce customers to purchase Samsung's so-called LED TVs in the mistaken belief that they are upgrading from their existing CCFL-lit LCD TVs; (b) to charge a premium for such televisions that Plaintiff and other consumers would not have paid had the televisions been accurately labeled and described; and (c) to capture sales from other brands' televisions that were accurately labeled as LED-lit LCD TVs.

6.      Samsung has perpetrated a massive consumer fraud upon thousands of unsuspecting purchasers, each of whom paid an unsupported premium for a deceptively labeled "LED TV," and on whose behalf Plaintiff brings this action to recover such premium and for other appropriate relief.

**PARTIES AND BACKGROUND**

7.      Plaintiff Frank Nance is a citizen of the State of California, presently residing in Yorba Linda, California.  While a citizen of California, Plaintiff Nance purchased a Samsung-brand television (model number UN46H7150) for personal use and not resale.  When Plaintiff Nance was considering purchasing this television, there were three flat panel television options widely advertised in the market at large - "Plasma TVs," "LCD TVs" and "LED TVs."  Plaintiff Nance considered models that were advertised by Samsung as "LED TVs" as well as models that were advertised as "LCD TVs."  Plaintiff Nance selected Samsung's "LED TV" model, even though it was priced higher than comparable model "LCD TVs" offered for sale, because of Samsung's marketing assertions on the carton

2
**COMPLAINT**

containing the television that it was an "LED TV," as opposed to an "LCD TV," which misled Plaintiff Nance into believing that he was purchasing a television that was different from and superior to an LCD TV in performance, when in fact he was not.

8.     Samsung is a New York corporation with its principal place of business located in Ridgefield Park, New Jersey.  Samsung distributes and markets and directs the marketing of so called "LED TVs" within this district, the State of California, and throughout the United States.

## STATEMENT OF FACTS
## TELEVISION OWNERSHIP AND SALES STATISTICS

9.     Televisions are ubiquitous in our society.  The Nielsen Company, a world-renowned expert in the field of television viewership, reported in 2012 that 97.1% of all U.S. households owned a television, and 84.4% owned more than one. According to the same report, in 2012, U.S. households were more likely to own a television than a cell phone (87.3%), DVD player (86.7%), or personal computer (80.9%).

10.    While the TV household penetration rate in the U.S. has been high for decades - exceeding 90% since 1965 - rapid advances in display technology (including the introduction of so-called flat panel televisions), the dramatic expansion of non-broadcast "cable" and "satellite" channels and providers, price competition, and the Congressional mandate that all full power television broadcasters (like ABC, NBC, and CBS) broadcast exclusively in digital format starting on June 13, 2009, have led many, and perhaps most, U.S. households to purchase at least one television, and often several units, within the past few years alone.

11.    Industry statistics bear out this phenomenon.  In February 2008, 25.1% of all U.S. households were HD Display Capable - meaning that they were

"equipped with an HD television that [was] capable of displaying HD content."
(HD or high definition content refers to the resolution of the screen image.  HDTVs
produce a resolution or level of detail that is much greater than standard definition
televisions.)  By May 2012, however, the number of U.S. households that were HD
Display Capable had increased to 75.5%.  Non-HD televisions cannot be converted
into HD televisions.  In order for the penetration rate to have tripled, 50% of all U.S.
households (or approximately 57,000,000 households based on U.S. Bureau of
Statistics figures) had to buy at least one new television unit in that approximately 4-
year period.

      12.     Industry statistics show:

          a)     In 2009, television manufacturers shipped over 35,300,000 "flat panel" (Plasma or LCD) television units for sale in the United States.

          b)     In 2010, television manufacturers shipped over 38,600,000 "flat panel" (Plasma or LCD) television units for sale in the United States.

          c)     In 2011, television manufacturers shipped almost 40,000,000 "flat panel" (Plasma or LCD) television units for sale in the United States.

          d)     In 2012, television manufacturers shipped over 37,600,000 "flat panel" (Plasma or LCD) television units for sale in the United States.

          e)     Total revenue from 2012 sales exceeded $28 billion.

          f)     While final figures were not yet accessible as of filing, in 2013, television manufacturers were forecast to ship over 36,600,000 "flat panel" (Plasma or LCD) television units for sale in the United States.  Total revenue from 2013 sales was projected to exceed $28 billion.

**COMPLAINT**

7563192.2

13.     As the following industry chart makes clear, globally, LCD TVs comprise the overwhelming majority of flat panel sales, and LED-lit LCD TVs now comprise the  overwhelming majority of "LCD TV" sales:



14.     Although LED-lit LCD TVs were introduced to the mass market in or about 2008, this technology has quickly come to dominate U.S. LCD TV unit sales, as the following statistics demonstrate:

a)     In 2009, approximately 3% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

b)     In 2010, approximately 22% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

c)     In 2011, approximately 45% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

d)     In 2012, approximately 51% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

e)     In 2013, approximately 84% of all LCD TV units sold in the US (volume, not dollar value), were projected to use LED backlighting.

5

**COMPLAINT**

## SAMSUNG'S MARKET LEADERSHIP

15.    Samsung's brand dominates the U.S. television market, and has been the market share leader (in the flat panel category) for the past seven years.

        a)    Samsung's share of the flat panel television market in 2009 in the U.S. was approximately 18.4%.

        b)    Samsung's share of the flat panel television market in 2010 in the U.S. was approximately 20%.

        c)    Samsung's share of the flat panel television market in 2011 in the U.S. was approximately 28%.

        d)    Samsung's share of the flat panel television market in 2012 in the U.S. was approximately 30%.

16.    Samsung's domination in U.S. sales of LED-lit LCD TVs, due in part to the false advertising described herein, is even more pronounced.  For example, while Samsung's overall market share for flat panel televisions in the U.S. was approximately 30% in 2012, Samsung sold approximately 40% of all LED-lit LCD TVs in that same year.

17.    Samsung's explosion in overall market share (from less than 20% to 30%) coincides with its decision to advertise falsely the LED-lit LCD TVs as LED TVs.

**COMPLAINT**

7563192.2

## TELEVISION DISPLAY TECHNOLOGIES

### CRT Televisions and Analog Rear Projection Televisions

18.     From virtually its earliest beginnings until the late 1990s, direct view CRT-technology (cathode ray tubes) dominated the United States television market. These were the boxy televisions of old, and were sold to consumers in a variety of screen sizes, up to a maximum of approximately 37" (measured diagonally).

19.     In a cathode ray tube television, a filament is placed inside a vacuum glass tube.  When the filament (cathode) is activated by electricity, it generates electrons, which fall off the heated filament into the vacuum.  A focusing anode attracts the electrons and focuses them into a tight beam or "ray," which is then accelerated.  The tight, now high-speed electrons travel through the vacuum in the tube and strike the flat glass screen at the other end of the tube - which is the back of the television's outward facing screen.  The back of the screen is coated with phosphor, which glows when struck by the electron beam.

20.     A phosphor is any material that, when exposed to radiation (like the electron beam), emits visible light.  In a black and white CRT TV, there is one phosphor that glows white when struck.  In a color screen, there are three phosphors arranged as dots or stripes, so as to emit red, green, and blue light when struck by the ray.

21.     CRT TVs were for decades the only televisions consumers could purchase.

22.     Exemplar images of CRT televisions follow:

  

7563192.2

23.     CRT TVs, moreover, have a built in size limitation.  The size of the screen is proportional to the size of the vacuum tube.  To increase the screen size, one must increase the length of the vacuum tube.  As a result, CRT TVs for the consumer market were generally only available in sizes up to 37" diagonal.

24.     Consumers who wanted a larger screen image were forced to purchase analog projection televisions.  Analog projection televisions of this era also used vacuum tube technology to generate the screen image.

25.     Exemplar images of analog projection televisions follow:

 

Plasma Televisions

26.     In or about the early 2000s, television manufacturers began introducing flat panel, plasma display televisions ("Plasma TVs") to the mainstream consumer market.  The introduction of Plasma TVs, which were thin and light enough to be mounted directly on a wall, revolutionized the television industry.

27.     Plasma TVs use plasma displays, which are composed of millions of small cells, or pixels, containing electrically charged ionized gases, to generate the screen image.  When the television is turned off, the ions and electrons in the gas or "plasma" are equally balanced, the atom is stable, and the pixel is dark.  When

**COMPLAINT**

1  electricity is introduced, however, the atoms become unstable and electrons and

2  particles within the plasma begin to collide, releasing photons of ultraviolet energy.

3        28.     Each pixel within the plasma display is made up of three separate

4  subpixel cells with different colored phosphors – one red, one blue, and one green.

5  As discussed above, in the context of CRT TVs, phosphors produce light photons –

6  they glow – when struck by energy.  The phosphors in the Plasma TVs are activated

7  by the ultraviolet photons, which can be varied in number by pixel and subpixel.

8  The amount of electricity applied to the subpixel determines the number of

9  ultraviolet photons generated, and thus the color intensity the subpixel generates,

10 which combines with the primary colors generated by the other two subpixels to

11 determine the color displayed on the screen by the pixel.  All of the pixels acting

12 together generate the screen image.  Exemplar graphical depictions of the image

13 generating process for a plasma display are set forth below:

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**COMPLAINT**

7563192.2



29.     The pixels used in plasma displays do not require a separate light source; the image and all of the colors are generated by the interaction between the electrically charged ionized gases and the phosphor in the cells.

30.     A generic image of a Plasma TV is set forth below:

## LCD Televisions

31.     In the early to mid-2000s, television manufacturers began introducing flat panel, liquid crystal display televisions ("LCD TVs") to compete with Plasma TVs (and to a lesser degree other available alternative technologies, e.g., CRT). While flat, reasonably light, and wall-mountable like Plasma TVs, LCD TVs utilize a fundamentally different display technology – liquid crystal displays ("LCD").

32.     To form a liquid crystal display or LCD, a very thin layer of a liquid crystalline substance is sandwiched between two substrates, which are sheets of glass or plastic to which a grid of electrodes has been applied.  A vertical polarizing film is applied to the LCD's rear substrate.  Patterned red, green and blue color filters and a horizontal polarizing film are applied to the front substrate.  The liquid crystals are rod-shaped polymers that are neither solid nor liquid and, when subject to an electric current, will align in a predictable manner.  In an LCD TV, the liquid crystal display (or LCD) is then lit by a separate source of light (the "light source") because, unlike plasma displays, liquid crystals do not emit light themselves.

33.     An LCD TV generates screen images by controlling the amount of light from the light source that passes through the LCD and strikes the color filters.  In very simple terms, the LCD is comprised of millions of tiny liquid crystal "shutters" that allow or block the passage of light depending on the intensity of the electric current being applied.  Each of these liquid crystal "shutters" corresponds to a tiny rectangular red, green, or blue filter or sub-pixel that is mounted to the front substrate (the surface closest to the television's glass screen).  As with plasma displays, three sub-pixels – one red, one green, and one blue – comprise a single pixel, and a "Full HD" or high definition television will contain more than 2 million pixels (1920 pixels horizontally multiplied by 1080 pixels vertically).  The amount of light that passes through each liquid crystal "shutter" determines the intensity of the red, green, or blue color that the corresponding subpixel generates.  The interaction of the trio of subpixels (for each pixel) determines the color that is displayed on the screen for that pixel.  All of the pixels together generate the screen image.  Exemplar graphical depictions of the image generating process for a liquid crystal display are set forth below:

**COMPLAINT**



34.    LCD technology is light source neutral: *i.e*., **any** white light source can be used to light and thus generate the screen image, a fact that has been widely known throughout the manufacturing industry since the introduction of this technology.  The quality of the picture produced by the LCD screen does not depend on or vary with the type of white light source used to light and generate the screen image.  LCD technology generates a visually indistinguishable picture and screen image regardless of the type of white light source used to light the display.  To represent such televisions as anything other than LCD TVs constitutes misrepresentation.

35.    Initially, and for quite a number of years, all manufacturers of LCD TVs primarily used cold cathode fluorescent lights (CCFLs) as the source light.   A picture of a generic CCFL light source of the type used in LCD TVs follows:



**COMPLAINT**

36.     Television manufacturers, however, continued to look into and market LCD TVs with other light sources, including LEDs, throughout this period.  For example, in 2004, Sony introduced the Sony Qualia 005.  The Sony Qualia 005 used an array of LEDs to illuminate the LCD panel.  The use of a different light source, however, did not change the manner in which LCD panels and LCD TVs generated the screen image described above.  A picture of a generic LED light source of the type used in LED-lit LCD TVs follows:



37.     Samsung introduced its own LCD TV with an LED light source in the Summer or Fall of 2007 (i.e., the 81 Series), and followed with a second generation series in 2008 - the LN46A950 and LN55A950 models.  While these televisions were sold to consumers, the number of units sold represented only a small fraction of Samsung's total LCD TV and other flat panel sales.  Samsung introduced a third generation of LED-lit LCD TVs (with more sizes) in 2009.  Samsung continued to sell CCFL-lit and LED-lit LCD TVs side by side throughout this time period, and for several years thereafter.   Samsung's CCFL-lit and LED-lit LCD TVs were sold in a variety of sizes and configurations throughout this time, but each used a liquid crystal display to generate the screen image.

38.    LED-lit LCD TVs soon proliferated - with multiple manufacturers using LEDs instead of CCFLs to light the liquid crystal display.  All of these televisions, however, regardless of the light source, employ a liquid crystal display or LCD screen to generate the TV picture.

## MARKETING OF LCD TELEVISIONS

39.    When liquid crystal display televisions were first introduced into the market, the televisions were universally marketed as "LCD TVs," just as plasma display televisions had been advertised as Plasma TVs.  No effort was made to advertise or designate this product line in reference to the CCFL or other light source used to light the LCD panel.  For example, the Sony Qualia was not advertised as an LED TV, nor were comparable liquid crystal displays using CCFL backlights advertised as CCFL TVs.  This remained true even as LED-lit LCD TVs became more common in the consumer segment of the market.

40.    Samsung's initial LED-lit LCD TV units were similarly advertised as LCD TV's:

- In 2008, when Samsung introduced its "second generation" LED-lit LCD TVs, it issued a press release heralding their availability. See http://www.displayblog.com/2008/07/23/samsung-series-9-ln55a950-55-lcd-tv-with-led-backlight/.   Samsung's press release very clearly states that the televisions were LCD televisions, albeit with a different light source.
  - Samsung's press release, for example, is titled (emphasis added):  "Samsung Delivers 2nd Generation **_LED-Backlit LCD HDTV_** with New Series 9 **_LED LCD_** HDTV."
  - The subheading (emphasis added) is "Series **_LED LCD_** HDTV Features…"

**COMPLAINT**

7563192.2

- ○ Relevant excerpts from the text of the press release include (emphasis added):
  - ▪ "unveils the successor to the company's award-winning *81 Series LED LCD HDTV*, with the launch of the new Series 9 *LED LCD HDTV*;"
  - ▪ "The 2008 flagship Series 9, Samsung's 2nd generation *LCD HDTV* to use LED SmartLighting™ technology …;"
  - ▪ "'Combining Samsung's LED SmartLighting and Auto Motion Plus 120Hz technologies in one high-performance *LCD HDTV, the Series 9 LCD* represents Samsung's continued focus on advancing the very highest picture quality available…' said Jonas Tanenbaum, *Vice President of LCD* Television Marketing at Samsung;"
  - ▪ "As Samsung's second generation *LCD HDTV* to use advanced LED SmartLighting with local dimming technology, the *Series 9 LCD HDTV* is able to achieve…;"
  - ▪ "the Series 9 *LED LCD* also features…;" and
  - ▪ "The Series 9 *LED LCD HDTVs* will be available in August in 46" class (45.9-inch measured diagonally) and the 55" class (54.9-inch measured diagonally) sizes. (Model numbers: LN46A950 and LN55A950)."
- • In 2009, when Samsung introduced its "third generation" LED-lit LCD TVs, it again issued a press release heralding their availability, and again clearly indicated that the televisions were

merely LCD televisions with a different light source.  See
http://www.samsung.com/us/news/newsPreviewRead.do?news_s
eq=11932

  o      Samsung's press release is titled (emphasis added):
         "Samsung Ushers In New Era For Flat Panel Television
         With New Category Line-up of **LED LCD** HDTVs."

  o      A relevant excerpt from the text included (emphasis
         added): "Samsung has proven LED technology is a viable
         choice for consumers desiring the best picture possible
         from **an LCD television**."

• Samsung's box imagery was similarly clear and accurate in this
timeframe.  For example, the box for Samsung's second
generation 2008 LN46A950 clearly discloses and advertises the
television as an LCD TV:

.



• Samsung's user manuals were similarly clear and accurate in this
timeframe.  For example, the user manual for the 46" LN46A950
refers to the television as an LCD TV in big bold letters on the
front page:

16

**COMPLAINT**



41.     Samsung's introduction of LED-lit LCD TVs did not result in the immediate end of CCFL-lit LCD TVs.  To the contrary, LED-lit LCD TVs did not sell well.  Because LED-lit LCD TVs were priced higher than comparable CCFL-lit LCD TVs, consumers continued to purchase CCFL-lit LCD TVs (or Plasma TVs) notwithstanding claims by Samsung and other manufacturers of the alleged benefits of LED backlighting.

42.     Manufacturers, including Samsung, continued to manufacture both CCFL and LED-lit LCD TVs, advertising and selling them side by side through the same retail and on-line channels.  While the LED lighting feature was often advertised, at least initially, no effort was made to conceal that these televisions utilized liquid crystal displays and were therefore in fact LCD TVs.  Most early advertising, like the Samsung press releases quoted above, clearly stated that the televisions were LED-lit LCD TVs or otherwise accurately described and disclosed that the television being advertised utilized LCD display technology.  As noted, very few consumers were interested enough to purchase the product, notwithstanding the LED light source.

**COMPLAINT**

7563192.2

43.     Faced with increased competition and anemic sales, Samsung then made the marketing decision that gives rise to this lawsuit:  Samsung began marketing the LED-lit LCD TVs as a new, advanced, technologically superior "species" of television, a so called LED TV, which was allegedly different from and better than LCD TVs.  In truth, however, both "species" of television use the same liquid crystal displays to generate visually indistinguishable screen images:



44.     Samsung's cartons now prominently referred to the televisions as "LED TVs"; nowhere on the carton did Samsung say the televisions were "LCD TVs" that used an LED light source or anything similar.  Moreover, Samsung's contemporaneous advertising of its CCFL-lit LCD TVs compounded Samsung's deception.  Samsung could have advertised and marketed, but chose not to advertise and market, such televisions as CCFL TVs.  Instead, Samsung advertised the CCFL-lit TVs as "LCD TVs" while contemporaneously advertising the LED-lit LCD TVs as "LED TVs" - even though both televisions used the same exact display technology  - i.e., a liquid crystal display - to produce visually indistinguishable pictures.

45.     Exemplar images of Samsung's new approach follow:

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





19

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





7563192.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





23

**COMPLAINT**











24

**COMPLAINT**

46.     The result of this deception was both immediate and dramatic: Samsung's sales of so-called LED TVs skyrocketed.  A product that had previously failed to make any significant inroads into the flat panel television market suddenly became the leader of the industry.  Before Samsung's false advertising, CCFL-lit LCD TVs had dominated LCD TV sales in the U.S. with over 97% of sales.  Today, however, as a result of Samsung's false advertising, so-called LED TVs now dominate the LCD TV market as well as the overall flat panel television market.

47.     LED-lit LCD TVs are *not* in fact LED TVs.  Although Samsung has falsely advertised LED-lit LCD TVs as "LED TVs" in a successful effort to increase sales and profits, the fundamental display technology or quality of its flat screen televisions has not changed.  All of these televisions use LCD screens to display their pictures.  These televisions were LCD TVs before Samsung's false advertising and remain LCD TVs today.  While a few manufacturers have refrained from falsely advertising their televisions as LED TVs, the majority of manufacturers, including Samsung, have chosen falsely to advertise their LED-lit LCD TVs as "LED TVs" (or have used similarly deceptive language - *e.g*., LED HDTV).

48.     The manufacturers that have refrained from this deception, such as Sony, RCA, and Hitachi, have seen their market shares fall, while those

manufacturers that have engaged in the deception, Samsung first among them, have reaped the benefits of increased sales.

49.     Samsung uses multiple marketing channels to create the appearance of a product category and price point that simply do not exist in the consumer market. For example, for years, when visiting Samsung's website, customers were directed to choose between LED TVs, LCD TVs, and Plasma TVs.[1]  The latter two categories accurately describe the applicable display technology, while the first misleadingly identifies only the light source, thus falsely implying that LED, not LCD, is the display technology.  Moreover, when potential purchasers click through to the actual televisions, for the LED TVs there is no reference to their being LCD display televisions.  This is deceptive.

50.     Samsung has used circulars, newspaper and magazine advertisements, and point of sale display materials to further its deception.

51.     In the absence of Samsung's deceptive advertising, Plaintiff and other consumers would instead have purchased a comparable model CCFL LCD TV from Samsung or another manufacturer at a lower price, or would have paid less for the falsely marketed and advertised "LED TV" models that they purchased from Samsung.

52.     Samsung is fully aware that the televisions at issue are LED-lit LCD TVs, that they do not contain LED displays, and that they are not LED TVs. Samsung has falsely advertised the televisions to increase sales and profits. Samsung would not have been able to charge the premium it has charged for its "LED TVs" if it had accurately advertised the televisions as LCD TVs or LED-lit LCD TVs.

---

[1] Samsung recently discontinued distributing CCFL-lit LCD TVs, although some remain for sale through third party retailers.  As a result, Samsung's web interface has been updated to eliminate the LCD category altogether.

7563192.2

## **LED-LIT LCD TVS ARE NOT LED *DISPLAY* TVS**

53.     LED-lit LCD TVs are not LED *Display* TVs, which employ a fundamentally different technology that is still several years away from availability at prices accessible to mainstream purchasers.  Actual LED Display TVs use light emitting diode displays instead of the liquid crystal displays or plasma displays described above.  The LED displays in these televisions are self-illuminating; they require ***no*** independent light source and do ***not*** contain liquid crystal technology. Actual LED Display TVs are currently available for sale, but at prices that only the wealthy can afford; the televisions are far out of the reach of mainstream consumers, who are generally not even aware of the existence of such true LED Display TVs. Because of their extremely high prices, quantities of true LED Display TVs are limited, and manufacturers, including Samsung, do not widely advertise or market such televisions.

54.     For example, Samsung's 55" LED Display TV, model KN55S9C, has retailed for $8,999.  A similarly sized Samsung LED-lit LCD TV sells for as low as $799 - less than one-tenth the price.

55.     As shown, while LED-lit LCD TVs are not LED Display TVs, various manufacturers, including Samsung, have deliberately and falsely claimed that such televisions are "LED TVs" in order to generate sales and charge a price premium for such televisions.

56.     Commentators in the trade press and on-line techie blogs have noted the deceptive nature of this marketing and labeling.  For example (all emphasis added):

- "***They are not LED TVs***. Calling them such makes as much sense as calling its existing line of LCD televisions Cold Cathode Fluorescent Lamp TVs, or CCFL TVs, after the lighting technology that they use….[The] decision to drop 'LCD' was a smart marketing move….But it's also confusing consumers."

- "***There is no such thing as an LED TV***. The misleading marketing on this one really annoys me.  All 'LED TVs' are just LCD TVs that use LEDs as their light source."

- "There has been a ***lot of hype and confusion*** surrounding the introduction of 'LED' Televisions….LED TVs are still LCD TVs.  It is just that these new sets use LED backlights rather than the fluorescent-type backlights used in most other LCD TVs.  In other words, LED TVs should actually be labeled LCD/LED or LED/LCD TVs."

- "The 2009 Samsung ad above reads, 'A Whole New Species of TV'. This was ***quite inconsistent*** for the TV industry, as it was the first time a television maker referred to the technology by the type of light bulbs used.  Less expensive LCDs were never called 'CCFL TVs' - prior to or after the debut of 'LED TV.'"

57.     There is nothing about LED-lit LCD TVs that renders them inherently superior to CCFL-lit LCD TVs.  The image that is generated on the television screen is visually indistinguishable from that of a comparable CCFL-lit LCD TV.

## PRICE PREMIUM

58.     Samsung's deceptive marketing practices have allowed it to charge a price premium for the LED-lit LCD TVs that it has misrepresented as "LED TVs." While the exact price premium varies by TV size (and other features), and has varied over time, at all times Samsung's LED-lit LCD TVs have been priced higher than otherwise comparable CCFL-lit LCD TVs.

7563192.2

**PLAINTIFF AND THE PROPOSED CLASS**

**WERE DECEIVED AND INJURED**

59.    Plaintiff and other purchasers of these "LED TVs" were misled into believing that they were purchasing a different category of TV other than the LCD TV they actually received, and have suffered damage as a result, in the form of the premium they were deceived into paying.  Plaintiff and the proposed class members had no knowledge that the televisions were in fact LCD TVs, and did not suspect, nor did they have reason to suspect, that the televisions they were purchasing had been falsely and deceptively advertised.

**PLAINTIFF'S RELIANCE AND INJURY**

60.    Plaintiff relied upon Samsung's false and deceptive representation that the television he was purchasing was an LED TV, as was prominently displayed on the television's carton at the time of purchase.  Plaintiff believed that he was purchasing something other than the LCD TV that he actually received.  Plaintiff would not have purchased or would have paid less for his television had the television not been falsely and deceptively advertised or had he known the truth.

**CLASS ALLEGATIONS**

61.    This action has been brought, and may be properly maintained, under Federal Rules of Civil Procedure 23(a) (1)-(4) and 23 (b) (2) and (3).

62.    Plaintiff brings this action on behalf of himself and all other members of a class (the "Nationwide Class") defined as follows:

> All persons who purchased, for personal use and not re-sale, within the United States within the four years (or other applicable statute of limitations period) preceding the filing of this Complaint up through any trial of this matter, a Samsung-brand LED-lit LCD television with one of the model numbers (or prefix) set forth in the attached Schedule 1, or any other model number that is sold in a box that describes the television as an LED TV or LED HDTV or LED television.

29

**COMPLAINT**

7563192.2

Excluded from the Nationwide Class are Samsung, and any person or entity related to or affiliated with Samsung, and any business, person, or entity that purchased such televisions for re-sale (e.g., retailers), any judicial officer assigned to the case, the court staff and jurors, along with their immediate families.

63.     Alternatively or in addition, Plaintiff brings this action on behalf of himself and all other members of a California class (the "California Subclass") defined as follows:

All persons who purchased, for personal use and not re-sale, within the State of California within the four years (or other applicable statute of limitations period) preceding the filing of this Complaint up through any trial of this matter, a Samsung-brand LED-lit LCD television with one of the following model numbers (or prefix) set forth in the attached Schedule 1, or any other model number that is sold in a box that describes the television as an LED TV or LED HDTV or LED television.

Excluded from the California Subclass are Samsung, and any person or entity related to or affiliated with Samsung, and any business, person, or entity that purchased such televisions for re-sale (e.g., retailers), any judicial officer assigned to the case, the court staff and jurors, along with their immediate families.

64.     On information and belief, each of the models listed in the attached Schedule 1 was sold by Samsung in a box that identified and marketed the enclosed television as an "LED TV" or "LED HDTV" or "LED television" (or substantially similar language).

65.     Each proposed class and subclass is composed of at least thousands of persons, and each is sufficiently numerous for class treatment.  Joinder of class members individually would be impracticable, and the resolution of each proposed class's claims in a single action will provide substantial benefits to the parties and the Court.

66.     Plaintiff's claims are typical of the claims of each proposed class or subclass member that Plaintiff (whether collectively or respectively) seeks to

7563192.2

1    represent, and Plaintiff has no interests that are adverse to the interests of the

2    members of each proposed class or subclass he seeks to represent.

3         67.    This dispute raises fundamental questions of law and fact that are

4    common to all of the proposed class or subclass members, and that predominate

5    over any individual class or subclass member issues that must be resolved to

6    adjudicate this claim, including, but not limited to:

7              a)    Whether Samsung marketed and advertised LED-lit LCD TVs as

8                    LED TVs;

9              b)    Whether Samsung intended to mislead the class when it

10                   marketed and advertised LED-lit LCD TVs as LED TVs; and

11             c)    Whether it is false or misleading to describe an LED-lit LCD

12                   television as an LED TV.

13        68.    Plaintiff will fairly and adequately protect the interests of the proposed

14   class and subclasses that Plaintiff (whether collectively or respectively) seeks to

15   represent.

16        69.    Plaintiff has retained experienced, qualified counsel to represent the

17   proposed classes and subclasses that Plaintiff (whether collectively or respectively)

18   seeks to represent.

19        70.    A class action is superior to other available methods for the fair and

20   efficient adjudication of this controversy since joinder of all of the proposed class or

21   subclass members is impracticable.  Even if Plaintiff and the other proposed class or

22   subclass members could afford individual litigation, the courts could not.  The

23   amount at stake for each proposed class or subclass member is such that individual

24   litigation would be inefficient and cost prohibitive.  Additionally, the adjudication of

25   this controversy through a class action will avoid the possibility of inconsistent and

26   potentially conflicting adjudications of the claims asserted herein.  There will be no

27   difficulty in the management of this action as a class action.

28

**COMPLAINT**

7563192.2

71.     This action is certifiable in the alternative under the provisions of Fed. R. Civ. P.  23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the proposed class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to such members as a whole and necessitating that any such relief be extended to the proposed class members on a mandatory, class-wide basis.

## FIRST CAUSE OF ACTION

**Violation Of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1 *Et Seq.*, By Plaintiff Nance Individually And On Behalf Of The Nationwide Class, Against Defendant Samsung**

72.     Plaintiff incorporates by reference and re-alleges each allegation set forth in paragraphs 1-71 hereinabove.

73.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.

74.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff Nance and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Nationwide Class members, thereby creating state interests that ensure that the choice of New Jersey law is not arbitrary or unfair.

75.     Samsung maintains its principal place of business in Ridgefield Park, New Jersey.  Samsung also owns property and conducts substantial business in New Jersey.  Samsung's decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the Nationwide Class's claims herein constitutionally permissible.

76.     The application of New Jersey's laws to the Nationwide Class is appropriate under a governmental interest test because New Jersey's interests would be most impaired if its law were not applied to adjudicate any given Nationwide Class member's case.  As the New Jersey Supreme Court explained, "[t]he Consumer Fraud Act [N.J.S.A. § 58:8-1, et seq.]… represents a legislative broadside against unsavory commercial practices."  *Real v. Radir Wheels, Inc*., 198 N.J. 511, 514 (2009).  Accordingly, New Jersey intends for its Consumer Fraud Act ("CFA") "to be 'one of the strongest consumer protection laws in the nation.'"  *New Mea Constr. Corp. v. Harper*, 497 A.2d 534, 543 (N.J. Super. 1985).  The Supreme Court has also observed that the CFA should be "liberally construed," *Real*, 198 N.J. at 520, and that the "history of the Act is one of constant expansion of consumer protection," *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604 (1997).

77.     Importantly, the New Jersey Supreme Court has identified "three main purposes" of the CFA:  "to compensate the victim for his or her actual loss; to punish the wrongdoer through the award of treble damages; and, by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual." *Real*, 198 N.J. at 520-21.  For any given Nationwide Class member's claim, while application of consumer laws other than New Jersey's might similarly compensate a consumer for his or her loss, New Jersey's laws have other purposes - namely, regulation of conduct of New Jersey-based businesses - and those purposes would be uniquely frustrated if New Jersey law were not applied to regulate the conduct of Samsung, a New Jersey-based business.  Upon information and belief, Samsung's deceptive marketing and advertising campaign, and nationwide distribution of deceptively marketed so-called "LED TVs," were created, approved, and coordinated out of its principal place of business in New Jersey.  Any attempt to limit application of New Jersey law only to New Jersey consumers would undermine New Jersey law's purpose of "counteract[ing] the

1   community scourge of fraud" where New Jersey-based companies doing business

2   nationwide are concerned.  Accordingly, New Jersey's interest in having its CFA

3   apply would be most impaired were it not applied to govern Samsung's conduct with

4   respect to the Nationwide Class.

5         78.    In the alternative, New Jersey law can be applied to the claims of all

6   Nationwide Class members to the extent that it does not materially differ from the

7   law of the other States with respect to these claims on these facts.  Any variations

8   can be managed through groupings of State law and/or subclasses.

9         79.    Plaintiff Nance and the other members of the Nationwide Class, and

10   Samsung, are all "persons" within the meaning of the CFA.

11         80.    Plaintiff Nance and the other members of the Nationwide Class are

12   "consumers" within the meaning of the CFA.

13         81.    At all relevant times material hereto, Samsung conducted trade and

14   commerce in New Jersey and elsewhere within the meaning of the CFA.

15         82.    The CFA is, by its terms, a cumulative remedy, such that remedies

16   under its provisions can be awarded in addition to those provided under separate

17   statutory schemes.

18         83.    Without limitation, Samsung has engaged in deceptive practices related

19   to the sale of televisions, including but not limited to marketing and selling the

20   televisions as LED TVs when they were in fact LCD TVs.

21         84.    As described herein, Samsung consciously failed to disclose material

22   facts to Plaintiff Nance and the other members of the Nationwide Class.

23         85.    Samsung's unconscionable conduct described herein included the

24   omission and concealment of material facts concerning the televisions.

25         86.    Samsung intended that Plaintiff Nance and the other members of the

26   Nationwide Class rely on its deceptive practices and the acts of concealment and

27   omissions described herein to, without limitation:  (a) induce customers to purchase

28   Samsung's so-called LED TVs in the mistaken belief that they are upgrading from

34

**COMPLAINT**

their existing CCFL-lit LCD TVs; (b) to charge a premium for such televisions that Plaintiff and other consumers would not have paid had the televisions been accurately labeled and described; and (c) to capture sales from other brand televisions that were accurately labeled as LED-lit LCD TVs.

87.     Had Samsung disclosed all material information regarding its so-called LED TVs to Plaintiff Nance and the other members of the Nationwide Class, they either:  (a) would not have purchased the televisions; or (b) would not have paid the premium charged had the televisions been accurately labeled and described.

88.     The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiff Nance and the other members of the Nationwide Class to suffer ascertainable damages, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorney's fees, and costs of suit.

## SECOND CAUSE OF ACTION

**Violation Of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 Et Seq., By Plaintiff Nance Individually And On Behalf Of The California Subclass, Against Defendant Samsung**

89.     Plaintiff Nance incorporates by reference and re-alleges each allegation set forth in paragraphs 1-71 hereinabove.

90.     Plaintiff Nance brings this claim on behalf of himself and the California Subclass.

91.     The acts and practices engaged in by Samsung, and described herein, constitute unfair, unlawful, and/or fraudulent business practices in that Samsung marketed the televisions as LED TVs when they were in fact LCD TVs:

      a)     Samsung's practices, as described herein, constitute false and deceptive conduct;

7563192.2

b) the justification for Samsung's conduct is outweighed by the gravity of the consequences to Plaintiff Nance and the California Subclass members;

c) Samsung's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff Nance and the California Subclass members; and/or

d) Samsung's conduct constitutes fraudulent, untrue or misleading actions in that such conduct has a tendency to deceive a reasonable person, including Plaintiff Nance and the California Subclass members.

92. Samsung's false and misleading advertising was disseminated to increase sales and to increase the amount of money that Samsung could charge for each television that was sold.

93. Samsung knew or should have known that their advertisements were false and misleading.

94. Plaintiff Nance and the California Subclass have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately.  Plaintiff Nance and the California Subclass have suffered injury in fact and have lost money or property as a result of Samsung's unfair competition, as alleged herein.

95. By reason of Samsung's violation of Cal. Bus. & Prof. Code § 17200, et seq., Plaintiff Nance and the California Subclass are entitled to recover restitution, injunctive relief, and such other relief as provided by law.

**COMPLAINT**

7563192.2

**THIRD CAUSE OF ACTION**

**Violation Of California's False Advertising Law, Cal. Bus. & Prof. Code**

**§§ 17500 Et Seq., By Plaintiff Nance Individually**

**And On Behalf Of The California Subclass, Against Defendant Samsung**

96.     Plaintiff Nance incorporates by reference and re-alleges each allegation set forth in paragraphs 1-71 hereinabove.

97.     Plaintiff Nance brings this claim on behalf of himself and the California Subclass.

98.     Samsung falsely marketed the televisions as LED TVs when they were in fact LCD TVs.  Samsung did this to increase sales and to increase the amount of money that Samsung could charge for each television that was sold.

99.     Samsung was aware at all relevant times that its advertising claims were false and misleading.

100.   Plaintiff Nance and the California Subclass have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately.  Plaintiff Nance and the California Subclass have suffered injury in fact and have lost money or property as a result of Samsung's false advertising, as alleged herein.

101.   By reason of Samsung's violation of Cal. Bus. & Prof. Code § 17500, et seq., Plaintiff Nance and the California Subclass are entitled to recover restitution, injunctive relief, and such other relief as provided by law.

**COMPLAINT**

7563192.2

**FOURTH CAUSE OF ACTION**

**Violation Of The California Consumers Legal Remedies Act, Cal. Civil Code**

**§§ 1750 Et Seq., By Plaintiff Nance Individually And On Behalf Of The**

**California Subclass, Against Defendant Samsung**

102. Plaintiff Nance incorporates by reference and re-alleges each allegation set forth in paragraphs 1-71 hereinabove.

103. Plaintiff Nance brings this claim on behalf of himself and the California Subclass.

104. In connection with the sale of goods to consumers, Samsung:

    a)    represented and represents "that goods…have characteristics…which they do not have" in violation of Cal. Civ. Code § 1770(a)(5);

    b)    represented and represents "that goods…are of a particular style or model" when they are actually of a different "style or model" in violation of Cal. Civ. Code § 1770(a)(7); and

    c)    advertised and advertises "goods…with intent not to sell them as advertised" in violation of Cal. Civ. Code § 1770(a)(9).

105. Samsung violated these provisions by representing that televisions were LED TVs when they were in fact LCD TVs. Plaintiff Nance and the California Subclass have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately. Concurrently with the filing of this Complaint, a CLRA notice letter will be served on Samsung advising Samsung that it has violated, and continues to violate, the Consumer Legal Remedies Act. Via this letter sent to Samsung's principal place of business, Plaintiff will advise Samsung that it must correct, repair, replace, or otherwise rectify the conduct alleged herein to be in violation of the Consumer Legal Remedies Act, and that if it

failed to respond to this demand and to take full remedial action (including by making full restitution) within thirty days of receipt of the Notice, Plaintiff Nance will amend this Complaint to request restitution, damages, actual damages, and punitive damages.  Assuming Defendant declines to remedy this wrong or cease its deceptive and unlawful practices as alleged herein, within thirty days, Plaintiff intends to amend this Complaint to seek compensatory and punitive damages on behalf of himself and the California subclass.

106.   Plaintiff Nance has filed the declaration of venue required by Cal. Civil Code § 1780(c).

107.   Plaintiff Nance and the California Subclass, by this cause of action, seeks injunctive relief and, as noted above, will amend to seek compensatory and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and each proposed class pray for judgment and relief as follows:

a.      An order certifying that this lawsuit is properly maintainable as a class action and certifying Plaintiff as the representatives of the Nationwide Class, or alternatively or in addition, certifying Plaintiff as the representative of the California Subclass;

b.      An injunction prohibiting Samsung from advertising nationwide (or, alternatively, within the State of California) LED-lit LCD TVs as LED TVs or LED HDTVs or LED televisions.

c.      An order requiring Samsung to engage in a corrective advertising campaign that informs the consuming public nationwide (or, alternatively, within the State of California) that so-called LED TVs are in fact LCD TVs with an LED backlight.

7563192.2

1     d.  An order requiring Samsung to re-label (or recall) all new LED-lit LCD

2   TVs in the possession of distributors or retailers or other resellers for resale

3   nationwide (or, alternatively, in the State of California) that do not contain a clear

4   and conspicuous disclosure that the television is an LCD TV with an LED backlight.

5     e.  For the Second and Third Causes of Action only, restitution in an

6   amount to be determined at trial;

7     f.  For all Causes of Action other than the Second and Third Causes of

8   Action, an award of compensatory, statutory, treble and punitive damages in

9   amounts to be determined by the Court and/or jury;

10    g.  For prejudgment interest as allowed by law;

11    h.  For attorneys' fees and costs; and

12    i.  For such other and further relief as may be just and proper.

13

14

15          **DEMAND FOR JURY TRIAL**

16    Plaintiff demands a trial by jury of all issues properly triable thereby.

17  DATED: April 14, 2016    RESPECTFULLY SUBMITTED,

18

19          By: /s/ Hayward J. Kaiser

20           Hayward J. Kaiser (66365)
             Gilbert S. Lee (267247)

21           Mitchell Silberberg & Knupp LLP
             11377 West Olympic Boulevard

22           Los Angeles, CA  90064
             Telephone: 310-312-2000

23           Facsimile: 310-312-3100
             Email:  hjk@msk.com

24                gsl@msk.com

25           Jonathan Shub (237708)
             Kohn Swift & Graf, P.C.

26           One South Broad Street, Suite 2100
             Philadelphia, PA  19107

27           Telephone: 215-238-1700
             Facsimile: 215-238-1968

28           Email: jshub@kohnswift.com

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Scarpulla Law Firm
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:      415-788-7210
Facsimile:      415-788-0706

Email:    fos@scarpullalaw.com;
               pbs@scarpullalaw.com

Daniel R. Shulman*
Gregory R. Merz*
Kathryn J. Bergstrom*
Dean C. Eyler*
Gray Plant & Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:      612-632-3000
Facsimile:      612-632-4444
Email:          daniel.shulman@gpmlaw.com
                gregory.merz@gpmlaw.com
                katie.bergstrom@gpmlaw.com
                dean.eyler@gpmlaw.com

*Attorneys for Plaintiff and the proposed class*

*\* denotes Pro Hac Vice Application to be
Submitted*

1

**COMPLAINT**

**SCHEDULE 1**

| | | |
|---|---|---|
| UN19C4000PD | UN46C8000XF | UN55D6900WF |
| UN19D4000ND | UN46C9000ZF | UN55D7000LF |
| UN19D4003BD | UN46C9000ZV | UN55D7050XF |
| UN19F4000AF | UN46D6000SF | UN55D7900XF |
| UN22C4000PD | UN46D6003SF | UN55D8000YF |
| UN22D5000NF | UN46D6050TF | UN55EH6000F |
| UN22D5003BD | UN46D6300SF | UN55EH6001F |
| UN22D5003BF | UN46D6400UF | UN55EH6030F |
| UN22D5010NF | UN46D6420UF | UN55EH6050F |
| UN22F5000AF | UN46D6450UF | UN55EH6070F |
| UN26C4000PD | UN46D6500VF | UN55ES6003 |
| UN26D4003BD | UN46D6900WF | UN55ES6003F |
| UN26EH4000F | UN46D7000LF | UN55ES6100F |
| UN26EH4050F | UN46D7050XF | UN55ES6150F |
| UN29F4000AF | UN46D7900XF | UN55ES6500 |
| UN32B6000VF | UN46D8000YF | UN55ES6500F |
| UN32C4000PD | UN46EH5000F | UN55ES6550F |
| UN32C5000QF | UN46EH5050 | UN55ES6580F |
| UN32C6500VF | UN46EH5050F | UN55ES6600F |
| UN32D4000ND | UN46EH5300F | UN55ES6820F |
| UN32D4003BD | UN46EH6000F | UN55ES6900F |
| UN32D4005BD | UN46EH6030F | UN55ES7003F |
| UN32D5500RF | UN46EH6050F | UN55ES7100F |
| UN32D6000SF | UN46EH6070F | UN55ES7150F |
| UN32D6500VF | UN46ES6003F | UN55ES7500F |
| UN32EH4000F | UN46ES6100F | UN55ES7550F |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7563192.2

| | | |
|---|---|---|
| UN32EH4003F | UN46ES6100G | UN55ES8000F |
| UN32EH4003V | UN46ES6150F | UN55ES8000G |
| UN32EH4050F | UN46ES6500F | UN55F6100AF |
| UN32EH5000F | UN46ES6500G | UN55F6300AF |
| UN32EH5050F | UN46ES6580F | UN55F6350AF |
| UN32EH5300F | UN46ES6600F | UN55F6400AF |
| UN32ES6500F | UN46ES6820F | UN55F6800AF |
| UN32F4000AF | UN46ES7100F | UN55F6800AF |
| UN32F5000AF | UN46ES7150F | UN55F7050AF |
| UN32F5050AF | UN46ES7500F | UN55F7100AF |
| UN32F5500AF | UN46ES7550F | UN55F7450AF |
| UN32F6300AF | UN46ES8000F | UN55F7450AFXZA |
| UN37C5000QF | UN46F5000AF | UN55F7500AF |
| UN37EH5000F | UN46F5050AF | UN55F8000BF |
| UN39EH5003F | UN46F5500AF | UN55F9000AF |
| UN39FH5000F | UN46F6300AF | UN55F9000AF |
| UN40B6000VFUZA | UN46F6350AF | UN55FH6003F |
| UN40B6000WFXZA | UN46F6400AF | UN55FH6030F |
| UN40B7000WFUZA | UN46F6800AF | UN60C6300SF |
| UN40B7000WFXZA | UN46F7100AF | UN60C6400RF |
| UN40C5000QF | UN46F7450AF | UN60D6000SF |
| UN40C5100QF | UN46F7500 | UN60D6400UF |
| UN40C6300SF | UN46F7500AF | UN60D6450UF |
| UN40C6300SFXZA | UN46F8000BF | UN60D6500VF |
| UN40C6400RF | UN46FH6030F | UN60D7000VF |
| UN40C6500VF | UN50EH5000F | UN60D7050VF |
| UN40C7000WF | UN50EH5000V | UN60D8000YF |

2

**COMPLAINT**

| | | |
|---|---|---|
| UN40D5003BF | UN50EH5050F | UN60EH6000F |
| UN40D5005BF | UN50EH5300F | UN60EH6002F |
| UN40D5500RF | UN50EH6000F | UN60EH6003F |
| UN40D5550RF | UN50EH6050F | UN60EH6050F |
| UN40D6000SF | UN50ES6100F | UN60ES6003F |
| UN40D6050TF | UN50ES6150F | UN60ES6100F |
| UN40D6300SF | UN50ES6500F | UN60ES6150F |
| UN40D6400UF | UN50ES6550F | UN60ES6500F |
| UN40D6420UF | UN50ES6580F | UN60ES7100F |
| UN40D6500VF | UN50ES6900F | UN60ES7150F |
| UN40EH5000F | UN50ES7100F | UN60ES7500F |
| UN40EH5050F | UN50F5000AF | UN60ES7550F |
| UN40EH5300F | UN50F5050AF | UN60ES8000F |
| UN40EH6000F | UN50F5500AF | UN60F6100AF |
| UN40EH6030F | UN50F6100AF | UN60F6300AF |
| UN40EH6050F | UN50F6300AF | UN60F6350AF |
| UN40ES6003F | UN50F6350AF | UN60F6400AF |
| UN40ES6100F | UN50F6400AF | UN60F7050AF |
| UN40ES6150F | UN50F6800AF | UN60F7100AF |
| UN40ES6500F | UN55B6000VFUZA | UN60F7450AF |
| UN40ES6580F | UN55B6000VFXZA | UN60F7500AF |
| UN40ES6820F | UN55B7000WFUZA | UN60F8000BF |
| UN40F5000AF | UN55B7000WFXZA | UN60FH6003F |
| UN40F5050AF | UN55B7100WFUZA | UN65C6500VF |
| UN40F5500AF | UN55B7100WFXZA | UN65C8000XF |
| UN40F6300AF | UN55B8000XF | UN65D8000XF |
| UN40F6350AF | UN55B8500XF | UN65EH6000F |

3

**COMPLAINT**

| | | |
|---|---|---|
| UN40F6400AF | UN55C5000QF | UN65EH6050F |
| UN40FH6030F | UN55C6300SF | UN65ES6500F |
| UN46B6000VFUZA | UN55C6400RF | UN65ES6550F |
| UN46B6000VFXZA | UN55C6500VF | UN65ES8000F |
| UN46B7000WFUZA | UN55C6800UF | UN65F6300AF |
| UN46B7000WFXZA | UN55C6900VF | UN65F6350AF |
| UN46B7100WFUZA | UN55C7000WF | UN65F6400AF |
| UN46B7100WFXZA | UN55C7100WF | UN65F7050AF |
| UN46B8000XF | UN55C8000XF | UN65F7100AF |
| UN46B8500XF | UN55C9000ZF | UN65F8000BF |
| UN46C5000QF | UN55D6000SF | UN65F9000AF |
| UN46C6300SF | UN55D6003SF | UN75ES9000F |
| UN46C6400RF | UN55D6005SF | UN75F6300AF |
| UN46C6500VF | UN55D6050TF | UN75F6400AF |
| UN46C6800UF | UN55D6300SF | UN75F6400CF |
| UN46C6900VF | UN55D6400UF | UN75F7100AF |
| UN46C7000WF | UN55D6420UF | UN75F8000AFXZA |
| UN46C7100WF | UN55D6450UF | UN85S9AFXZA |
| | UN55D6500VF | |

4

**COMPLAINT**

# EXHIBIT 1

### DECLARATION OF FRANK NANCE

I, Frank Nance, the undersigned, declare:

1.      I am the named plaintiff in the class action lawsuit entitled Nance v. Samsung Electronics America Inc.  Except as stated herein, I make this declaration of my own personal knowledge, and if called upon to do so, could and would testify to the facts set forth herein.

2.      I purchased a Samsung brand television, model number UN46H7150 in California.

3.      It is my understanding that Samsung sells televisions and does business throughout the United States, including most, if not all, the counties within the Central District of California.  For example, a review of the website for Best Buy discloses that Best Buy sells Samsung brand televisions both online and in its stores.  Best Buy has stores located throughout Los Angeles, Riverside, and Orange County, among other places, within the Central District of California.  Samsung clearly does business in each those locations.

4.      In addition, Samsung offers its televisions on its own website, which I am informed and believe is accessible from within the Central District of California.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12 day of April, 2016, at YORBA LINDA California.

_Frank D. Nance_

Frank Nance